1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   VIERRAMOORE, INC.,                      No.  2:12-cv-01926-MCE-EFB

12              Plaintiff,

13        v.                                 **MEMORANDUM AND ORDER**

14   CONTINENTAL CASUALTY
     COMPANY, and DOES 1 through 10,
15
                Defendants.
16

17

18        This matter arises out of Defendant Continental Casualty Company's ("Defendant"

19   or "Continental") motion for summary judgment against Plaintiff VierraMoore, Inc.

20   ("Plaintiff" or "VierraMoore").  (ECF No. 14.)  Plaintiff opposes the motion.  (ECF No. 21.)

21   For the reasons set forth below, Defendant's motion is GRANTED.[1]

22   ///

23   ///

24   ///

25   ///

26   ///

27   ───────────────
            [1] Because oral argument would not be of material assistance, the Court ordered this matter
28   submitted on the briefs.  E.D. Cal. Local Rule 230(g).

                                            1

1

# BACKGROUND[2]

2

3     **A.    Factual Background**

4

5         VierraMoore is a management and consulting firm which provided property

6 management services to Linwood Owners Association ("Linwood").  (First Amended

7 Complaint ("FAC"), ECF No. 12 ¶ 6.)  In 2010, Linwood filed a lawsuit, captioned

8 <u>Linwood Owners Association v. Bond Safeguard Insurance Company, et al</u>, Case

9 No. SCV 248701, against VierraMoore and a number of other defendants in the Superior

10 Court of California for the Sonoma County ("the Underlying Action").  (SUF ¶ 15.)

11 Subsequently, VierraMoore tendered the defense and indemnity of the claims, which

12 were brought against it by Linwood, to Continental under two insurance policies:

13 (1) EPack for Private Companies, Policy No. 169874280, issued to VierraMoore for the

14 claims policy period of May 16, 2010 to May 16, 2011 ("VierraMoore Policy"); and

15 (2) Community Association, Policy No. 0251202670, issued to Linwood for the claims

16 period of March 24, 2010 to March 24, 2011 ("Linwood Policy").  (SUF ¶¶ 1-2, 16-23.)  In

17 the instant action, VierraMoore alleges that Continental had a duty to defend and a duty

18 to indemnify VierraMoore in connection with the Underlying Action based on both

19 insurance policies.  (FAC ¶¶ 12-20, 22-30.)

20

21         **1.    The VierraMoore Policy**

22

23         The VierraMoore Policy, which Continental issued to Plaintiff, contains only one

24 coverage part – the Miscellaneous Professional Liability ("MPL") Coverage Part.  (ECF

25 No. 19-1; SUF ¶ 3.)

26 ///

27         [2] This case presents almost purely legal issues.  Thus, the facts are, for the most part, undisputed.
(<u>See</u> Plaintiff's Response to Defendants' Statement of Material Undisputed Facts ("SUF"), ECF

28 No. 21-11.)  Where the facts are disputed, the Court recounts Plaintiff's version of the facts.

Subject to its terms, conditions and exclusions, the MPL Coverage Part in the VierraMoore Policy affords coverage for "Loss resulting from any Claim first made against Named Company Insured for a Wrongful Act by such Named Company Insured or by someone for whom the Named Company Insured is legally responsible."  (ECF No. 19-1 at 14; SUF ¶ 4.)  As used in the MPL Coverage Part, "Wrongful Act" is defined to mean "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by a Named Company Insured in its performance of Professional Services."  (ECF No. 19-1 at 15; SUF ¶ 5.)  "Professional Services" is defined to mean "Community Association Manager or Property Manager Services" performed by a Named Company Insured for others for a fee.  (ECF No. 19-1 at 19; SUF ¶ 6.)

The VierraMoore Policy defines "Community Association Manager or Property Manager Services" as follows:

> Community Association Manger or Property Manager Services means the following services provided by a person, other than a Construction Manager, in connection with the management of commercial or residential property for others for a fee:
>
> a. development and implementation of management plans and budget;
>
> b. oversight of physical maintenance of property;
>
> c. solicitation, evaluation and securing of tenants and management of tenant relations, collection of rent and processing evictions;
>
> d. development, implementation and management of loss control and risk management plans for real property;
>
> e. development, implementation and management of contracts and subcontracts (excluding insurance contracts) necessary to the daily functioning of the property;
>
> f. feasibility studies and recommendations regarding maintenance, repairs, renovations or alterations of managed premises, provided said maintenance, repairs, renovations or alterations do not involve the services of an architect; and
>
> g. personnel administration and record keeping, including tax filings, in connection with a managed property.

3

1  (ECF No. 19-1 at 19; SUF ¶ 7.)

2       Further, as relevant for the purposes of Defendant's instant motion for summary

3  judgment, the MPL Coverage Part in the VierraMoore Policy contains a "Bond

4  Exclusion," which provides as follows:

5          The Insurer shall not be liable to pay any loss under this
        Coverage Part in connection with any Claim made against a

6          Named Company Insured . . . based upon, directly or
        indirectly arising out of, or in any way involving the failure to

7          effect or maintain any insurance or bond, or to any failure to
        cover certain perils or to purchase an adequate amount or

8          type of insurance.

9  (ECF No. 19-1 at 15, 20.)

10

11         **2.**    **The Linwood Policy**

12

13       The Linwood Policy names Linwood as the "Named Entity Insured."  (ECF

14  No. 19-2; SUF ¶ 14.)  The Linwood Policy contains only one coverage part - the

15  Association Liability Coverage Part, and affords coverage for "Loss resulting from any

16  Claim first made against any Named Entity, Subsidiary, Insured Person or Property

17  Manager for a Wrongful Act committed, attempted, or allegedly committed or attempted,

18  by such Named Entity Insured before or during the Policy Period."  (ECF No. 19-2 at 14;

19  SUF ¶¶ 10-11.)  The Linwood Policy defines "Insured Persons" to mean, <u>inter alia</u>, "all

20  past, present or future duly elected or appointed directors . . . of Named Entity . . ."  (ECF

21  No. 19-2 at 14.)

22       Relevant for the purposes of this litigation, the Linwood Policy contains two

23  "Insured v. Insured" exclusions, which state as follows:

24          1.   <u>Exclusions Applicable to all Loss</u>

25          The Insurer shall not be liable to pay any Loss in
        connection with any Claim:

26

27          . . .

28          j.    by or derivatively on behalf of the Named Entity
        or any Subsidiary;

. . .

3.     Exclusions Applicable to Property Manager

The Insurer shall not be liable to pay any Loss of the Property Manager based upon, directly or indirectly arising out of, or in any way involving:

. . .

g.     any Claim brought by or derivatively on behalf of the Named Entity Insured against a Property Manager or a Property Manager Employee.

(ECF No. 19-2 at 16, 18, 19.)

## 3.     The Underlying Action

The Underlying Action was commenced by Linwood in the Superior Court of California for the Sonoma County in January 2010.   (SUF ¶ 15.)  The Underlying Action arose out of the two Common Area Completion Security Agreements ("Development Agreements"), pursuant to which Linwood Village Investors, LLC ("LVI") agreed to complete all common area improvements within a housing community subdivision, known as "Linwood at Ragle Ranch," located in Santa Rosa, California ("the Subdivision").  (See Declaration of Jerome Huang in Support of Defendant's Motion for Summary Judgment ("Huang Decl."), ECF No. 19 ¶ 11; ECF No. 19-11 at 6.)  Linwood is, and at all relevant times was, a homeowners association responsible for maintenance and operation of the Subdivision.  (ECF No. 19-11 at 4-5.)  During the relevant time period, VierraMoore provided property management services to Linwood pursuant to the Association Management Services Agreements dated February 17, 2006, and March 5, 2008.  (Declaration of George W. Moore in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Moore Decl."), ECF No. 22 ¶ 7; ECF Nos. 22-2, 22-3.)

///

///

1     The Subdivision project was divided into two phases: (1) Phase I with the initial

2   completion date of May 2006, and (2) Phase II with the initial completion date of

3   December 2006.  (ECF No. 19-11 at 6.)  To protect Linwood in the event that LVI could

4   not fulfill its obligations under the Development Agreements, including timely delivery of

5   the common area improvements, LVI obtained two surety bonds ("Bonds") from Bond

6   Safeguard Insurance Company ("Bond Safeguard").  (Id.)

7     As alleged in the Second Amended Complaint filed in the Underlying Action,

8   neither the Phase I nor Phase II common area improvements have been completed by

9   LVI.  (Id. at 7.)  When Linwood made a demand on Bond Safeguard under the Bonds

10  obtained by LVI, Bond Safeguard refused to perform on the ground that the claim period

11  for filing a claim under the Bonds had expired.  (Id. at 9.)  In the Underlying Action,

12  Linwood alleged that VierraMoore entered into an agreement with LVI to extend the

13  deadlines for LVI to complete the Subdivision project but failed to obtain the approval of

14  Bond Safeguard for such extensions, which ultimately led to Linwood's inability to obtain

15  payments under the Bonds.[3]  (Id. at 10-14.)  According to Linwood, it was VierraMoore's

16  responsibility to make sure that the Bonds remained enforceable when the Subdivision

17  project's completion deadlines were extended to 2008.  (Id.)

18    For its part, VierraMoore filed a cross-claim in the Underlying Action against four

19  of Linwood's former directors claiming that, to the extent VierraMoore was liable to

20  Linwood, Linwood's directors should be found liable to VierraMoore under the theories of

21  tort of another, negligence and equitable estoppel.  (Declaration of Gregory L. Maxim in

22  Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Maxim

23  Decl."), ECF No. 21-1 ¶ 5; ECF No. 21-9.)  More specifically, VierraMoore alleged in its

24  cross-claim that Linwood's former directors had a duty to provide VierraMoore with

25  instructions as to VierraMoore's specific tasks and duties as Linwood's property

26  manager.  (ECF No. 21-9 at 4-8.)

27    

---

[3] Linwood asserted three causes of action against VierraMoore in the Underlying Action:
(1) Professional Negligence; (2) Breach of Contract; and (3) Tort of Another.  (ECF No. 19-11 at 10-14.)

1    Despite being aware of the existence and nature of the Bonds, Linwood's former

2    directors allegedly failed to direct VierraMoore to seek an extension from Bond

3    Safeguard or to file an action against Bond Safeguard, which allowed the purported

4    limitations period to pass on pursuing a claim against Bond Safeguard.  (Id.)

5          In April and then in May of 2011, VierraMoore tendered Linwood's claims in the

6    Underlying Action for defense and indemnity to Continental under the VierraMoore

7    Policy.  (SUF ¶¶ 16, 18.)  Around the same time, VierraMoore also tendered the

8    Underlying Action for defense and indemnity under the Linwood Policy.  (SUF ¶¶ 20, 22.)

9    Continental denied coverage under both insurance policies.  (SUF ¶¶ 17, 19, 21, 23.)

10   However, Continental agreed to provide defense and indemnity to Linwood's former

11   directors, under the Linwood Policy, with respect to VierraMoore's cross-claim against

12   the directors.  (ECF No. 21 at 12-13.)

13         On November 1, 2012, the Underlying Action was settled without any admission

14   of liability by any party.  (SUF ¶¶ 24-25.)  Under the terms of the settlement agreement,

15   VierraMoore agreed to pay Linwood $87,500.  (ECF 21-10 at 3.)  Continental agreed to

16   contribute $77,500 of the settlement amount, with VierraMoore paying the remaining

17   $10,000.  (SUF ¶ 25.)  Continental and VierraMoore agreed that their respective

18   payments were made without prejudice or waiver of each party's right to seek

19   recoupment from the other for the settlement amounts contributed to settle the

20   Underlying Action, and without waiving each party's claims or defenses in the instant

21   action.  (SUF ¶ 25.)

22

23         **B.    Procedural Background**

24

25         VierraMoore initiated this insurance coverage action in the Superior Court of

26   California, County of Sacramento, by filing a complaint on June 21, 2012.  (ECF No. 1.)

27   Subsequently, Continental removed the action to this Court on the basis of diversity

28   jurisdiction.  (Id.)

1　　After the Underlying Action had resulted in a settlement, Continental stipulated to allow

2　　VierraMoore to amend the complaint to include a claim for reimbursement of the $10,000

3　　which was paid by VierraMoore to settle the Underlying Action.  (ECF No. 11.)  On

4　　December 13, 2012, VierraMoore filed its operative FAC alleging state-law causes of

5　　action for breach of contract, breach of implied covenant of good faith and fair dealing,

6　　negligence and declaratory relief.  (ECF No. 12.)  On December 14, 2012, Continental

7　　answered and filed a counterclaim against VierraMoore to recoup the $77,500 paid by

8　　Continental on behalf of VierraMoore to settle the Underlying Action.  (ECF No. 13.)

9　　　　On December 14, 2012, Continental filed the instant Motion for Summary

10　　Judgment asking the Court: (1) to declare that Continental has no defense or indemnity

11　　obligations to VierraMoore with respect to the Underlying Action; and (2) to award

12　　Continental $77,500 in damages for the amount paid by Continental to settle the

13　　Underlying Action on behalf of VierraMoore.  (ECF No. 15 at 1.)

14

15　　　　　　　　　　　　　　　　　**STANDARD**

16

17　　　　Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is

18　　appropriate when it is demonstrated that there exists no genuine issue as to any material

19　　fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

20　　56(a); Karuk Tribe of Cal. v. U.S. Forest Serv., 681 F.3d 1006, 1017 (9th Cir. 2012).

21　　One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or

22　　defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Summary judgment

23　　should be entered "against a party who fails to make a showing sufficient to establish the

24　　existence of an element essential to that party's case, and on which that party will bear

25　　the burden of proof at trial."  Id. at 322.  "[W]here the nonmoving party will bear the

26　　burden of proof at trial on a dispositive issue, a summary judgment motion may properly

27　　be made in reliance solely on the 'pleadings, depositions, answers to interrogatories,

28　　and admissions on file.'"  Id. at 324.

The Supreme Court explained:

> [T]he party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323.  In attempting to establish the existence of a factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)).  As the Supreme Court explained,

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal citations omitted).

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.

1   Anderson, 477 U.S. at 255.  However, "inferences are not drawn out of the air, and it is

2   the opposing party's obligation to produce a factual predicate from which the inference

3   may be drawn."  County of Inyo v. Dep't of Interior, 873 F. Supp. 2d 1232, 1239 (E.D.

4   Cal. 2012).

5

6   **ANALYSIS**

7

8   In its FAC, VierraMoore alleges that Continental has breached its obligations

9   under the VierraMoore Policy and the Linwood Policy, as well as the implied covenant of

10   good faith and fair dealing under both policies, by refusing and failing to reimburse for

11   costs incurred to defend and to indemnify VierraMoore in the Underlying Action.  (FAC

12   ¶¶ 18, 28, 34.)  Additionally, VierraMoore alleges that Continental committed negligence

13   by breaching its contractual duties under the VierraMoore and Linwood Policies.  (Id.

14   ¶¶ 38-39.)  Finally, VierraMoore requests the Court declare that its loss is covered by the

15   two insurance policies at issue.  (Id. ¶ 44.)  Thus, all of Plaintiff's claims against

16   VierraMoore depend on the existence of coverage under the VierraMoore and Linwood

17   Policies.  Accordingly, to defeat Defendant's motion for summary judgment, Plaintiff must

18   demonstrate that Continental had, at a minimum, a duty to defend VierraMoore with

19   respect to the Underlying Action.

20   Under California law, an insurer's duty to defend is broader than the duty to

21   indemnify, and an insurer must defend a suit which potentially seeks damages within the

22   coverage of the policy.  Anthem Elecs., Inc. v. Pac. Employers Ins. Co., 302 F.3d 1049,

23   1054 (9th Cir.2002); Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 1081 (1993).

24   Because the insurer's duty to defend is broader than the duty to indemnify, a conclusion

25   that the insurer did not owe a duty to defend will be dispositive of a claim that the insurer

26   had a duty to indemnify."  Delgado v. Interinsurance Exch. of Auto. Club, 47 Cal.4th 302,

27   308 n.1 (2009).

28   ///

1    "In resolving the question of whether a duty to defend exists . . . the insurer has a

2    higher burden than the insured." Am. States Ins. Co. v. Progressive Cas. Ins. Co.,

3    180 Cal. App. 4th 18, 27 (2009).  While the insured "need only show that the underlying

4    claim may fall within policy coverage," the insurer "must present undisputed facts that

5    eliminate any possibility of coverage." Id. (emphasis in the original).  Thus, under

6    California law, the duty to defend "may exist even where coverage is in doubt and

7    ultimately does not develop." Montrose Chem. Corp. v. Superior Court, 6 Cal.4th 287,

8    295 (1993).  "Any doubt as to whether the facts give rise to a duty to defend is resolved

9    in the insured's favor." Horace Mann Ins. Co., 4 Cal. 4th at 1081.

10   "Whether the insurer owes a duty to defend usually is made in the first instance by

11   comparing the allegations of the complaint with the terms of the policy and extrinsic facts

12   known by the insurer at the inception of the third party lawsuit." Palp. Inc. v.

13   Williamsburg Nat'l Ins. Co., 200 Cal. App. 4th 282, 289 (2011) (internal citations and

14   quotation marks omitted) (emphasis in the original).  "[T]he duty to defend arises when

15   the facts alleged in the underlying complaint give rise to a potentially covered claim

16   regardless of the technical legal cause of action pleaded by the third party." Barnett v.

17   Fireman's Fund Ins. Co., 90 Cal. App. 4th 500, 510 (2001).  In addition, "facts extrinsic to

18   the complaint also give rise to a duty to defend when they reveal a possibility that the

19   claim may be covered by the policy." Horace Mann Ins. Co., 4 Cal.4th at 1081.

20   While the duty to defend is broad, an insurer "will not be compelled to defend its

21   insured when the potential for liability is . . . tenuous and farfetched." Lassen Canyon

22   Nursery, Inc. v. Royal Ins. Co. of Am., 720 F.2d 1016, 1018 (9th Cir.1983).  In other

23   words, the duty to defend does not require an insurer to undertake a defense as to

24   claims that are "factually and legally untethered from the third party's complaint."

25   Storek v. Fidelity & Guar. Ins. Underwriters, Inc., 504 F. Supp. 2d 803, 812 (N.D. Cal.

26   2007).  Thus, '[t]he insurer's defense duty is obviated where the facts are undisputed

27   and conclusively eliminate the potential the policy provides coverage for the third party's

28   claim."

1    Palp, 200 Cal.App.4th at 289; see also We Do Graphics, Inc. v. Mercury Casualty Co.,

2    124 Cal.App.4th 131, 136 (2004) ("If, at the time of tender, the allegations of the

3    complaint together with extrinsic facts available to the insurer demonstrate no potential

4    for coverage, the carrier may properly deny a defense.").  "An insurer is entitled to

5    summary judgment that no potential for indemnity exists if the evidence establishes no

6    coverage under the policy as a matter of law."  Palp, 200 Cal. App. 4th at 289.

7        In its motion for summary judgment, Continental argues that it has neither the

8    duty to defend nor the duty to indemnify VierraMoore under the policies at issue because

9    both policies contain clear and unambiguous exclusions barring coverage with respect to

10    the Underlying Action.  In order to rely on policy exclusions to deny that it has a duty to

11    defend, Continental must provide "conclusive evidence" that the exclusions apply, see

12    Atl. Mut. Ins. Co. v. J. Lamb, Inc., 100 Cal. App. 4th 1017, 1038-39 (2002), and the Court

13    strictly construes the exclusionary clauses in favor of VierraMoore, see N. Am. Building

14    Maint., Inc. v. Fireman's Fund Ins., 137 Cal. App. 4th 627, 642 (2006).  With these

15    principles and guidelines in mind, the Court will analyze whether either the VierraMoore

16    Policy or the Linwood Policy provides insurance coverage for Plaintiff with respect to the

17    Underlying Action.

18

19       **A.**      **VierraMoore Policy**

20

21        Continental argues that the Bond Exclusion in the VierraMoore Policy clearly bars

22    coverage for claims asserted by Linwood against VierraMoore in the Underlying Action.[4]

23    (ECF No. 15 at 13.)

24    ///

25    _____

26       [4] Continental also argues that the VierraMoore Policy does not provide coverage for Plaintiff because the Underlying Action does not involve VierraMoore's performance of "Professional Services" as

27    required under the Policy.  (ECF No. 15 at 11.)  Because the Court finds that summary judgment for Continental should be granted pursuant to the Bond Exclusion contained in the VierraMoore policy, the

28    Court need not analyze whether Linwood's claims in the Underlying Action arose out of VierraMoore's performance of "Professional Services."

1    According to the relevant language in the VierraMoore Policy, Continental is not liable for

2    "any loss . . . in connection with any Claim made against a Named Company Insured"

3    "based upon, directly or indirectly arising out of, or in any way involving the failure to

4    effect or maintain any insurance or bond, or to any failure to cover certain perils or to

5    purchase an adequate amount or type of insurance."  (ECF No. 19-1 at 15, 20; SUF ¶ 9.)

6         In the Underlying Action, Linwood asserted three claims for relief against

7    VierraMoore: professional negligence, breach of contract, and tort of another.  With

8    respect to all three causes of action, Linwood alleged that it was VierraMoore's duty to

9    ensure that Bond Safeguard's obligations under the Bonds remained enforceable, and

10   that VierraMoore breached that duty by failing to obtain Bond Safeguard's approval to

11   extend the deadlines for completion of the Subdivision's common area improvements.

12   (ECF No. 19-11 at 11-13.)  Therefore, all three claims that Linwood asserted against

13   VierraMoore in the Underlying Action arose out of VierraMoore's alleged failure to

14   ensure that Linwood had effective surety bond coverage in the event that its common

15   area construction phases were not completed pursuant to the terms of the Development

16   Agreements.  As such, Linwood's claims against VierraMoore, as pleaded in the

17   Underlying Action, fall squarely within the scope of the Bond Exclusion.  Therefore, the

18   VierraMoore Policy provides no potential for coverage with respect to Linwood's claims

19   against VierraMoore.

20        For its part, Plaintiff argues that the Bond Exclusion does not apply to the

21   Underlying Action because, at the time Plaintiff procured the VierraMoore policy, it was

22   under "reasonable belief" that the exclusion would only apply to VierraMoore's failure to

23   effect any insurance or bond "for itself" as a property manager of Linwood, and not for

24   any third party.  (ECF No. 21 at 7; Moore Decl. ¶¶ 4-5.)  VierraMoore contends that its

25   subjective belief renders the contractual language at issue "susceptible to two contrary

26   interpretations," and accordingly urges the Court to interpret the Bond Exclusion against

27   the insurer, i.e., Continental.  (ECF No. 21 at 7.)

28   ///

13

1    Interpretation of an insurance contract, including the resolution of contractual

2 ambiguities, is a matter of law, and thus can be decided on summary judgment when

3 facts are undisputed. Barnett v. State Farm Gen. Ins. Co., 200 Cal. App. 4th 536, 543

4 (2011); see also Hervey v. Mercury Cas. Co., 185 Cal. App. 4th 954, 962–63 (2010)

5 ("When the facts are undisputed, . . . the interpretation of a contract, including whether

6 an insurance policy is ambiguous or whether an exclusion or limitation is sufficiently

7 conspicuous, plain, and clear, is a question of law.").

8    Under California law, insurance contracts, like any other contract, must be

9 construed in accordance with their plain meaning pursuant to ordinary rules of

10 contractual interpretation. St. Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co.,

11 111 Cal. App. 4th 1234, 1243 (2003). Accordingly, an insurance policy "must be

12 interpreted to give effect to the mutual intent of the parties at the time of contracting, and

13 such intent is ascertained, if possible, from the 'clear and explicit' language of the

14 contract." Id.; see also Cal. Civil Code § 1638 ("The language of a contract is to govern

15 its interpretation, if the language is clear and explicit, and does not involve an

16 absurdity."); Cal. Civil Code § 1639 ("When a contract is reduced to writing, the intention

17 of the parties is to be ascertained from the writing alone, if possible . . .").

18    Generally, to be enforceable, an exclusionary clause in the insurance policy "must

19 pass muster under two independent tests: '(1) The exclusion must be conspicuous[5] and

20 (2) the language of the exclusion must be plain and clear.'" Elwood v. Aid Ins. Co.,

21 880 F.2d 204, 207 (9th Cir.1989) (quoting Ponder v. Blue Cross of S. Cal.,

22 145 Cal App. 3d 709, 719 (1983)). When the exclusionary clause is stated in clear and

23 unambiguous language, such "plain language of the limitations must be respected."

24 Interinsurance Exch. of Auto. Club. of S. Cal. v. Velji, 44 Cal. App. 3d 310, 314–15

25 (1975). However, an ambiguous exclusionary clause should be interpreted narrowly

26 against the insurer "so as to afford the greatest possible protection to the insured."

27 MacKinnon v. Truck Ins. Exchange, 31 Cal.4th 635, 648 (2003).

28    [5] VierraMoore does not dispute that the Bond Exclusion in the VierraMoore Policy is conspicuous.

14

1    An exclusionary clause is ambiguous "only if it is susceptible to two or more reasonable

2    constructions despite the plain meaning of its terms within the context of the policy as a

3    whole.'"  Atl. Mut. Ins. Co. v. Ruiz, 123 Cal. App. 4th 1197, 1203 (2004).  Words in the

4    exclusionary provision must be read in their "plain and ordinary sense," and ambiguity

5    cannot be based on a strained rather than reasonable interpretation of the policy's terms.

6    McKee v. State Farm Fire & Cas., Co., 145 Cal. App. 3d 772, 776 (1983).

7         Here, the language of the Bond Exclusion in the VierraMoore Policy clearly and

8    unambiguously bars coverage for loss in connection with "any claim" made against

9    VierraMoore "in any way involving the failure to effect or maintain any insurance or

10   bond."  (ECF No. 19-1 at 15, 20.)  By arguing that this provision should be limited to

11   VierraMoore's failure to maintain a bond for itself, and not for Linwood or any other third

12   parties, VierraMoore is attempting to graft words onto the Bond Exclusion that would

13   radically narrow its scope.  Because the language of the exclusion, as written, is not

14   subject to several reasonable interpretations, the Court must enforce the exclusion as

15   written.  See Buss v. Superior Court, 16 Cal.4th 35, 45 (1997) ("Where it is clear, the

16   language must be read accordingly.").

17        Moreover, "[t]he fundamental goal of contractual interpretation is to give effect to

18   the mutual intention of the parties."  Bank of the West v. Superior Court, 2 Cal.4th 1254,

19   1264 (1992) (emphasis added).  Here, VierraMoore has presented no evidence, besides

20   its undisclosed expectation of coverage, that would suggest that the parties intended to

21   limit the Bond Exclusion's scope only to VierraMoore's failure to maintain insurance or

22   bonds for itself.  VierraMoore's unilateral expectation of coverage cannot create an

23   ambiguity in an otherwise unambiguous exclusionary clause.  See Cal. Traditions, Inc. v.

24   Claremont Liability Ins. Co., 197 Cal. App. 4th 410, 421 (2011) ("[T]he courts have

25   recognized that when a policy clearly excludes any potential for coverage, '[a]ny

26   expectation to the contrary on the part of the [insured] would have been subjective and

27   unreasonable.  A party's subjective intent cannot be used to create an ambiguity or a

28   material factual issue.'").

1   Thus, evidence of the party's subjective expectations becomes relevant only if the Court

2   finds that an ambiguity exists.  Because the Court has concluded that the Bond

3   Exclusion, as written, is not susceptible to more than one reasonable interpretation,

4   VierraMoore's unilateral expectation that the exclusion would not apply to its failure to

5   obtain a bond for Linwood's benefit is immaterial.

6          Plaintiff further argues that the Bond Exclusion does not apply because Linwood

7   did not explicitly allege in the Underlying Action that VierraMoore "failed to effect or

8   maintain the bonds at issue," but instead only asserted that VierraMoore "fail[ed] to

9   secure from the surety and/or bond company a written extension authorizing the

10  developer to complete the common areas in 2008, instead of 2006."  (ECF No. 21 at

11  7-8.)  Additionally, Plaintiff argues that Linwood's allegations in the Underling Action

12  were not limited to VierraMoore's alleged failure to secure an extension on the surety

13  bonds, but also concerned VierraMoore's other actions not falling within the scope of the

14  Bond Exclusion.  (Id. at 8.)  In particular, Plaintiff, relying on discovery obtained in the

15  Underlying Action, contends that Linwood's claims were also based on (1) VierraMoore's

16  failure to obtain Linwood's approval before granting an extension to LVI;

17  (2) VierraMoore's failure to transmit to the Department of Real Estate an accurate

18  account of the status of the Bond expiration dates; (3) VierraMoore's failure to inform

19  Linwood that an extension to the Bonds would be required; (4) VierraMoore's failure to

20  advise Linwood that the Bonds were set to expire and to advise it to file suit on the

21  Bonds; and (5) VierraMoore's failure to advise LVI that it needed to consult with and

22  receive a written extension from Bond Safeguard.  (Id. at 11-12.)  The Court does not

23  find Plaintiff's arguments persuasive.

24          Pursuant to its plain language, the Bond Exclusion covers not only claims "directly

25  arising" out of VierraMoore's "failure to effect or maintain any insurance or bond," but

26  also any claims "based upon," "indirectly arising out of," or "in any way involving" such a

27  failure.  (ECF No. 19-1 at 15, 20.)

28  ///

16

1    Under California law, the term "arising out of" and similar broadly defined clauses require

2    "only a 'slight connection' or an 'incidental relationship' between the injury and the

3    excluded risk."  Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.,

4    42 Cal. App. 4th 121, 128 n.4 (1996).  "It is settled that this language does not import

5    any particular standard of causation or theory of liability into an insurance policy.

6    Rather, it broadly links a factual situation with the event creating liability, and connotes

7    only a minimal causal connection or incidental relationship."  Acceptance Ins. Co. v.

8    Syufy Enters., 69 Cal. App. 4th 321, 328 (1999).

9         As Defendant correctly points out, the only purpose of "maintaining" a bond, once

10   it is "effected," is to make sure that it remains enforceable.  (ECF No. 23 at 8.)  The sole

11   ground for VierraMoore's liability, as alleged by Linwood in the Underlying Action, is

12   VierraMoore's failure to ensure that the Bonds at issue remained enforceable.  (See ECF

13   No. 19-11 at 11-13.)  Had VierraMoore ensured enforceability of the Bonds, Linwood

14   would have no cause of action against it in the Underlying Action.  Thus, even if

15   Linwood's claims against VierraMoore did not concern "effecting" the Bonds per se,

16   Linwood's claims at a minimum were "based upon, directly or indirectly ar[ose] out of, or

17   in any way involve[d]" VierraMoore's failure to maintain the Bonds.  (See ECF No. 19-1

18   at 20.)  Therefore, Continental has conclusively established that there is no potential for

19   coverage for any of the claims asserted against VierraMoore in the Underlying Action.

20        In sum, even under the broad standards applicable to determining the scope of

21   the insurer's duty to defend, there was never a possibility for coverage under the

22   VierraMoore Policy for the claims Linwood asserted against VierraMoore in the

23   Underlying Action.  As analyzed above, the Bond Exclusion in the VierraMoore's Policy

24   is clear, explicit, and unambiguous, and thus should be enforced as written.

25   ///

26   ///

27   ///

28   ///

17

1  Because Linwood's claims against VierraMoore in the Underlying Action clearly fall

2  within the scope of the Bond Exclusion, summary judgment for Continental on claims

3  arising out of the VierraMoore Policy is proper.[6]

4

5      **B.      The Linwood Policy**

6

7          Defendant argues that VierraMoore is not entitled to coverage under the Linwood

8  Policy because Section III of the Association Liability Coverage Part of the Linwood

9  Policy contains two "Insured v. Insured" exclusions that each independently defeat

10 VierraMoore's claim to coverage.  (ECF No. 15 at 9-10.)

11         As explained above, the Linwood Policy affords coverage for "Loss resulting from

12 any Claim first made against any Named Entity, Subsidiary, Insured Person or Property

13 Manager."  (ECF No. 19-2 at 14.)  The Linwood Policy defined "Insured Persons" to

14 mean, inter alia, "all past, present or future duly elected or appointed directors" of

15 Linwood.  (Id.)  The two "Insured v. Insured" exclusions, which Defendant refers to in its

16 Motion for Summary Judgment, bar coverage for (1) "any Loss in connection with any

17 Claim" "by or derivatively on behalf of the Named Entity or any Subsidiary," and (2) "any

18 Loss of the Property Manager based upon, directly or indirectly arising out of, or in any

19 way involving . . . any Claim brought by or derivatively on behalf of the Named Entity

20 Insured against a Property Manager or a Property Manager Employee."  (Id. at 16, 18,

21 19; SUF ¶¶ 12, 13) (emphasis added).

22         The Underlying Action was brought by Linwood, which is the Named Entity

23 Insured under the Linwood Policy, against VierraMoore, which is Linwood's Property

24 Manager.

25 ///

26

27         [6] Because Continental did not have a duty to defend or duty to indemnify VierraMoore, it also is
   not liable for breach of the implied covenant of good faith and fair dealing and for professional negligence
   claims premised on the breach of the insurance contract at issue.  See Manzarek v. St. Paul Fire & Marine
28 Ins. Co., 519 F.3d 1025, 1034 (9th Cir.2008).

1    Therefore, under the express terms of the "Insured v. Insured" exclusions, there is no

2    potential for coverage under the Linwood Policy with respect to the Underlying Action,

3    and Continental's duty to defend or to indemnify is not triggered.  VierraMoore does not

4    dispute that Linwood's claims are covered by the "Insured v. Insured" exclusions, but

5    instead argues that Linwood either waived or forfeited the exclusions when it agreed to

6    provide defense and indemnity to Linwood's former directors against VierraMoore's

7    cross-claim in the Underlying Action.  (ECF No. 21 at 11-15.)

8          Under California law, an insurer may lose its contractual right by waiver,

9    estoppel,[7] or forfeiture.  Chase v. Blue Cross of Cal., 42 Cal. App. 4th 1142, 1151

10   (1996).  An insurer waives its right to deny coverage by intentionally relinquishing that

11   right, see id., or by acting in a manner "inconsistent with an intent to enforce the right as

12   to induce a reasonable belief that such right has been relinquished."  Waller v. Truck Ins.

13   Exchange, Inc., 11 Cal.4th 1, 33-34 (1995).  Forfeiture, on the other hand, is "the

14   assessment of a penalty against the insurer for either misconduct or failure to perform an

15   obligation under the contract."  Chase, 42 Cal. App. 4th at 1151.  The burden is on the

16   party claiming waiver or forfeiture of a right to prove it by clear and convincing evidence.

17   Waller, 11 Cal. 4th at 31.

18         As mentioned above, VierraMoore filed a cross-complaint against the members of

19   VierraMoore's Board of Directors in the Underlying Action alleging that, if VierraMoore is

20   liable to Linwood for any failure to obtain an appropriate extension of the contractual

21   limitation periods from Bond Safeguard, Linwood's directors are also liable for their

22   failure to direct VierraMoore to obtain such extension.  (Maxim Decl. ¶¶ 5-7; ECF

23   No. 21-9.)  When Linwood's former directors tendered VierraMoore's cross-claims

24   against them to Continental under the Linwood Policy, Continental determined that those

25   cross-claims were covered by the Policy and subsequently provided defense and

26   indemnity to the directors in the Underlying Action.  (Maxim Decl. ¶ 8.)

27   ///

28   _____
          [7] VierraMoore does not argue that the doctrine of estoppel applies.

1   VierraMoore now argues that the "Insured v. Insured" exclusions in the Linwood Policy

2   should have barred coverage for VierraMoore's cross-claims against Linwood's directors

3   because VierraMoore brought its cross-claims "derivatively" on behalf of Linwood.  (ECF

4   No. 21 at 13.)  More specifically, as argued by VierraMoore, Linwood was to obtain

5   "derivative" benefit from VierraMoore's cross-complaint against Linwood's directors

6   because VierraMoore raised claims that Linwood "was either unwilling, or unable, to

7   raise itself against its own agents/actors."  (Id.)  Thus, according to Plaintiff, Linwood

8   cannot now insist that the "Insured v. Insured" exclusion bars coverage for VierraMoore

9   in the Underlying Action when it waived the exclusions' application to Linwood's directors

10   in factually similar circumstances.  (Id. at 13-14.)

11          Under California law, a derivative action is an exception to the general rule

12   requiring a corporation itself to bring an action to recover the losses caused by the

13   wrongdoing of its officers or directors.  Nelson v. Anderson, 72 Cal. App. 4th 111, 124

14   (1999).  "The fundamental purpose of a derivative action is to provide a means by which

15   a stockholder may seek to enforce the rights of a corporation when the corporate board

16   refuses to do so.  If successful, a derivative claim will accrue to the direct benefit of the

17   corporation and not to the stockholder who litigated it."  Grosset v. Wenaas, 42 Cal.4th

18   1100, 1114 (2008) (internal citations omitted).  Thus, a derivative action is "a

19   representative action brought on behalf of the corporation," and the shareholder plaintiff,

20   who brings such an action, acts "in a fiduciary capacity substantially as guardian ad litem

21   for the corporation."  Chih Teh Shen v. Miller, 212 Cal. App. 4th 48, 57 (2012).

22          Here, VierraMoore does not appear to be Linwood's shareholder or to have any

23   other ownership interest in Linwood.  Thus, it does not have standing to bring a

24   derivative action on Linwood's behalf under California law.  Even were the Court to

25   conclude that VierraMoore could bring a "derivative" action on behalf of Linwood, nothing

26   in VierraMoore's cross-claim against Linwood's former directors suggests that

27   VierraMoore sued the directors "derivatively."

28   ///

1    In particular, VierraMoore brought its cross-claim against Linwood's directors in its own

2    name and never mentioned, until now when the Underlying Action is over, that it was

3    suing Linwood's former directors on Linwood's behalf or for Linwood's benefit.

4    VierraMoore's cross-claim filed in the Underlying Action alleged no facts and cited to no

5    authority suggesting that VierraMoore sued for injury to Linwood.  It is undisputed that

6    Linwood never brought a claim against its own directors in the Underlying Action or in

7    any way endorsed VierraMoore's cross-claim against Linwood's former directors.

8         Plaintiff does not cite to any statutory or case authority, and the Court is not aware

9    of any, allowing VierraMoore to bring a "derivative" suit on Linwood's behalf under the

10   circumstances presented in this case.  Thus, when Linwood's former directors tendered

11   VierraMoore's cross-claim to Continental under the Linwood Policy, Continental properly

12   provided defense and indemnity to the directors after establishing that VierraMoore's

13   cross-claim was brought against "Insured Persons," and coverage was not barred by the

14   "Insured v. Insured" exclusions.  In contrast, the present action involves a lawsuit by "the

15   Named Entity Insured" (Linwood) against its "Property Manager" (VierraMoore), and thus

16   is clearly barred by the unambiguous language of both "Insured v. Insured" exclusions in

17   the Linwood Policy.  (See SUF ¶¶ 12, 13.)

18        In sum, the Court concludes that Continental has presented undisputed facts

19   demonstrating that no possibility of coverage exists under the Linwood Policy pursuant

20   to clear, explicit, and unambiguous language of the two "Insured v. Insured" exclusions.

21   Because Plaintiff has failed to demonstrate that Continental's defense of Linwood's

22   former directors should have been barred by the "Insured v. Insured" exclusions in the

23   Linwood Policy, it cannot, as a matter of law, claim that Continental either waived or

24   forfeited the application of these exclusions with respect to the Underlying Action.

25   Accordingly, summary judgment is proper for Continental on all of VierraMoore's claims

26   arising out of the Linwood Policy.

27   ///

28   ///

1
2

### C.     Continental's Right of Recoupment

3      In its counterclaim against Plaintiff, Continental alleges that it is entitled to

4  recoupment from Plaintiff of the $77,500 that Continental paid on VierraMoore's behalf to

5  settle the Underlying Action.  (FAC ¶ 10.)  Plaintiff concedes that Continental would be

6  entitled to recoupment if Continental prevails on its contention that coverage cannot

7  reasonably be afforded to Plaintiff under either the VierraMoore or the Linwood Policy.

8  (ECF No. 21 at 12).

9      "[A] third party insurer that reserves its right to reimbursement may seek

10  reimbursement in quasi-contract for funds advanced or paid out that the insurer was not

11  obligated to pay under the policy."  Old Republic Ins. Co. v. FSR Brokerage, Inc.,

12  80 Cal. App. 4th 666, 677 (2000). Thus, an insurer may "recover settlement or defense

13  funds that it had no contractual duty to pay provided it can establish that it reserved a

14  right to reimbursement, and there is otherwise a proper basis for recovery in quasi-

15  contract."  Id.  The prerequisites for seeking recoupment of funds extended to settle the

16  Underlying Action include: (1) "a timely and express reservation of rights"; and (2) "an

17  express notification of the insureds of the insurer's intent to accept a proposed

18  settlement order."  Blue Ridge Insurance Co. v. Jacobsen, 25 Cal. 4th 489, 502 (2001).

19  Both prerequisites are satisfied here because (1) Continental's payment of $77,500 on

20  behalf of VierraMoore to settle the Underlying Action was made subject to a complete

21  reservation of rights, including the right of recoupment, and (2) VierraMoore had actual

22  knowledge of Continental's intent to settle the Underlying Action because it explicitly

23  demanded that Continental make the payment at issue to Linwood.  (SUF ¶ 25.)  Under

24  these circumstances, "California law clearly supports the insurer's right to reserve and

25  enforce recoupment of sums advanced to procure a settlement."  See Downey Venture

26  v. LMI Ins. Co., 66 Cal. App. 4th 478, 517 (1998).

27  ///

28  ///

1    Because, as fully analyzed above, neither the VierraMoore Policy nor the Linwood

2    Policy provides coverage to VierraMoore in connection with the Underlying Action,

3    VierraMoore is entitled to recoup the $77,500 that it paid on behalf of VierraMoore to

4    settle the Underlying Action subject to a full reservation of rights, including the right of

5    recoupment.  Accordingly, summary judgment on Continental's counterclaim against

6    VierraMoore is proper.

7

8                                    **CONCLUSION**

9

10    For the reasons detailed above, the Court finds that neither the VierraMoore

11    Policy nor the Linwood Policy provides insurance coverage, or potential coverage, with

12    respect to Linwood's claims asserted against VierraMoore in the Underlying Action.

13    Thus, all of Plaintiff's claims for relief fail as a matter of law and summary judgment for

14    Defendant is proper.  Accordingly, the Court GRANTS Defendant's Motion for Summary

15    Judgment (ECF No. 14.)  Plaintiff is ordered to pay Defendant $77,500 that Defendant

16    advanced on Plaintiff's behalf to settle the Underlying Action.

17    The Clerk of the Court is directed to enter judgment in Defendant's favor

18    accordingly.

19    IT IS SO ORDERED.

20    DATED:  April 12, 2013

21

22    _____

23    MORRISON C. ENGLAND, JR, CHIEF JUDGE
      UNITED STATES DISTRICT JUDGE

24

25

26

27

28